IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IVAN HARVEY,
      Petitioner,

v.                         Case No.  3:09cv43/LC/CJK

KENNETH S. TUCKER,[1]
      Respondent.

_____

ORDER and
## REPORT AND RECOMMENDATION

      Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 17).  Petitioner has replied.  (Doc. 29).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.   Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the Court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

### BACKGROUND AND PROCEDURAL HISTORY

      On December 28, 2005, petitioner was convicted, pursuant to his guilty plea,

---

[1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

of  dealing in stolen property, grand theft, and pawnbroker fraud, in the Circuit Court for Escambia County Florida, Case No. 04-5775.  (Doc. 17, PD-1, p. 7).  By order filed January 10, 2006 petitioner was sentenced to 2 years community control on each count, to run concurrently with each other.  (Doc. 17, Ex. A).[2]  On April 18, 2006, petitioner was charged with violating his community control by failing to comply with the financial obligations of his community control.  (Ex. B, p. 1).  A Second Amended Affidavit was filed on November 15, 2006, charging petitioner with additional violations, namely, committing new criminal offenses.  (*Id*., p. 3).

New criminal cases were opened on the new charges.  In Escambia County Circuit Court Case No. 06-3599, petitioner was charged with two counts of grand theft and two counts of fraudulent use of credit cards.  (Ex. PD-2, Ex. C, Docket Sheet).  In Escambia County Circuit Court Case No. 06-4302, petitioner was charged with one count of dealing in stolen property.  (*Id.*).  In Escambia Circuit Court Case No. 06-4303, petitioner was charged with one count of grand theft.  (*Id.*).  The charges in Case Nos. 06-3599 and 06-402 arose out of petitioner's obtaining an elderly (and ailing) man's Home Depot and Lowe's credit cards, using them fraudulently to obtain property at Home Depot and Lowes, and then either selling the items to private third parties under the guise that they were legitimately owned and not stolen, or returning the items to the stores in exchange for gift cards.  (Exs. B-1, B-2).  The charges in 06-4303 arose out of petitioner stealing an edger and generator from Home Depot.  (Ex. B-3).

On June 12, 2007, shortly before trial was to begin, petitioner's counsel

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 17, unless otherwise noted.

advised the court that petitioner desired to plead "straight up" to all charges (those charged in the 2006 cases as well as the violation of community control).  (Ex. C, pp. 191-92).  A plea hearing was held, and petitioner pleaded no contest to all charges. (Ex. C, pp. 189-200 through Ex. D, pp. 201-22).  The court adjudicated petitioner guilty of violation of community control (Case No. 04-5775), two counts of fraudulent use of credit cards (Case No. 06-3599), one count of dealing in stolen property (Case No. 06-4302) and one count of grand theft (Case No. 06-4303).  (Ex. C, p. 176).  Sentence was imposed as follows:

- Case No. 04-5775:  Petitioner's community control was revoked and petitioner was sentenced to 5 years incarceration on each count to run concurrently with each other and concurrently with the sentence imposed in Case No. 06-4302.

- Case No. 06-3599:  Petitioner was sentenced to 5 years incarceration on each count to run concurrently with each other and concurrently with the sentence imposed in Case No. 06-4302.

- Case No. 06-4302:  Petitioner was sentenced to 15 years incarceration with the provision that after serving 7 years imprisonment the balance of the sentence would be suspended and petitioner placed on probation for 8 years.

- Case No. 06-4303:  Petitioner was sentenced to 5 years incarceration to run concurrently with the sentence imposed in Case No. 06-4302.

(Ex. C, pp. 176-187; Ex. D, pp. 216-18).  In imposing sentence, the court noted that the two charges of grand theft in Case No. 3599 merged with Count 1 in Case No. 06-4302. (Ex. C, p. 187). Judgment was entered June 12, 2007. (*Id*., p. 176). Petitioner

did not directly appeal the judgment.  (*Id*., p. 83).[3]

On June 27, 2007, petitioner filed a counseled motion to modify sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. E).  The motion was denied on July 9, 2007.  (*Id*.).

By motion delivered to prison officials on July 5, 2007, petitioner moved to withdraw his plea.  (Ex. D, pp. 224-26).  On July 24, 2007, the trial court entered an order striking petitioner's *pro se* motion.  (PD-1, item 294; PD-2, item 153).

On August 13, 2007, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. C, p. 1).  The motion was stricken as facially insufficient, with leave given to file an amended motion.  (*Id*., pp. 17-79).  Petitioner filed an amended motion on January 6, 2008.  (*Id*., pp. 80-158).  The motion was summarily denied by order rendered April 25, 2008 (*id*., pp. 162-74), with record attachments (Ex. C, pp. 176-200 through Ex. D, pp. 201-59).  The appellate court summarily affirmed without written opinion.  *Harvey v. State*, 993 So. 2d 518  (Fla. 1st DCA 2008) (Table) (copy at Ex. G).  The mandate issued December 9, 2008.  (*Id*.).

Petitioner filed his *pro se* federal habeas petition on January 29, 2009.  (Doc. 1).  He challenges his conviction on six grounds.  (*Id*.).

STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

---

[3]Although petitioner states on the petition form that he appealed the judgment (doc. 1, p. 2), the opinion he references is the state appellate court opinion affirming the denial of petitioner's postconviction motion.  The trial court docket sheets confirm that no direct appeal was filed.  (Ex. C).

Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the

federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claims.

## ANALYSIS

Ground 1     Ineffective Assistance of Counsel for Failure to Take Depositions

In his first ground for relief, petitioner asserts the following:

> Trial counsel refused to take certain depositions that would have, if taken, shed doubt as to Defendant's guilt.  Counsel failed to investigate the sworn deposition testimony of Defendant's wife which, if done, would have revealed the multiple lies told by her and actually verified Defendant's claim of innocence.

(Doc. 1, p.  4).  Petitioner does not identify who counsel should have deposed.  (*Id.*, p. 3-4; Doc. 2, pp. 3-4).  In his supporting memorandum he acknowledges that counsel not only deposed his wife, but also "some witnesses." (Doc. 2, pp. 2-3).  He asserts, however, that counsel "refused to depose those witnesses that would have helped the defense,"  (*id.*, p. 3), apparently by "contradict[ing] the testimony of petitioner's wife" (*id.*, p. 4).  Petitioner further explains that he learned at the plea colloquy that the investigating officer was a long-time acquaintance of petitioner's wife and her family.  (*Id.*, p. 3).  Petitioner concedes he could have brought this up during the plea hearing, but contends he "felt trapped and was forced to proceed as he did under the affirmative misadvice of counsel."  (*Id.*).

Respondent asserts this claim provides no basis for federal habeas relief, because it is too conclusory and lacks a sufficient factual basis.  To the extent petitioner presented a more specific claim in state court by identifying Hosea Jones as the proposed deponent, the state court's denial of relief was consistent with clearly established federal law.  (Doc. 17, pp. 4-8).

A.     Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea.  *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926).  "A guilty plea is an admission of

criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)).   "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).   The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

Once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (referencing *McMann v. Richardson, supra*); *see also  Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56–57 (quoting *McMann v. Richardson*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland* at 689.  Under this standard, representation is ineffective only if counsel commits

"serious derelictions" of her duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.      Federal Review of State Court Decision

The state trial court denied relief after citing *Torres-Arboleda v. Dugger*, 636 So.2d 1321, 1324 (Fla. 1994),  a case applying the *Strickland* standard.  The state court explained:

> Defendant claims that counsel was ineffective because she failed to take the deposition of Hosea Jones [petitioner's wife's father]. Defendant claims that had counsel deposed Mr. Jones, Defendant would have been able to use Mr. Jones' testimony to call into question the testimony of the State's key witness, Mrs. Katherine Harvey, defendant's wife, at trial.  Defendant asserts that Mr. Jones' testimony would have shown that Mrs. Harvey "had knowledge that merchandise was at his house."  Defendant further asserts that Mr. Jones would have testified that Mrs. Harvey was the "driver of the vehicle that delivered some merchandise to his house."   This information was crucial, according to Defendant, because "Katherine Harvey told multiple lies in deposition, and she is the only one that could actually clear Defendant of fraudulent credit card use."   Defendant claims that counsel's poor investigation let him no choice but to plea to the charges.

> Defendant has failed to demonstrate deficient performance on the part of his counsel.   It is clear that counsel was well aware that Defendant's position was that his wife was in part responsible for the crime, as counsel cross-examined witnesses at sentencing on the involvement of Mrs. Harvey.

> Secondly, when a defendant makes sworn statements to a court, he cannot later disavow those statements in a motion for postconviction relief.  "An appellant is not entitled to go behind sworn representations made to the court in a postconviction proceeding." Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006), citing Stano v. State, 520 So. 2d 278, 280 (Fla. 1988).

During the plea colloquy, the Court placed Defendant under oath and gave him an opportunity to inform the Court of his concerns. The Court asked Defendant whether he was satisfied with the advice and assistance of his attorney. When the Court inquired, Defendant could have told the Court that his counsel had not taken important depositions, including that of Hosea Jones, and that counsel had not investigated thoroughly. However, Defendant did not elect to do so. Instead, Defendant told the Court, under oath, that he was satisfied with his counsel's advice and assistance and that he was comfortable taking a plea. Defendant cannot now disavow his sworn representations to the Court. Defendant's first claim entitles him to no relief.

(Ex. C, pp. 165-66) (footnotes omitted). The state appellate court summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts. Therefore, the "contrary to" prong of the AEDPA standard is not implicated. In reviewing the state court's decision under AEDPA's "unreasonable application" prong, this Court must decide whether there was any reasonable basis for the state court's decision. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011); *Branch v. Sec'y, Fla. Dep't of Corr*. 638 F.3d 1353, 1354 (11th Cir. 2011).

The state appellate court reasonably could have concluded petitioner was not entitled to relief on this claim. Petitioner was asked at the plea hearing if he understood that by entering pleas on the charges he was waiving and giving up the right to go to trial, to present defenses, to call witnesses on his behalf, to be present and cross-examine witnesses who testified against him, and to appeal any judgment and finding of guilt by a jury, as well as any sentence. (Ex. C, p. 193). Petitioner responded, under oath, that he understood he would be waiving and giving up all those rights by entering no contest pleas. (*Id*.). Wen asked if he wished to waive and

give up those rights and enter a plea, petitioner consulted with defense counsel, then responded, "Yes, Your Honor." (*Id*.).  The trial court inquired:

> THE COURT:  All right, now there was a little hesitation on your part. I want to be sure that this is your decision to do so.
>
> MS. HARRIS [Defense counsel]:  Your Honor, Mr. Harvey looked at him [sic].  I told him that's what I thought he should do.
>
> THE COURT:  I understand that's your recommendation but this needs to be Mr. Harvey's decision free from any advice or suggestion by you. I want to be sure that this is his –
>
> MS. HARRIS:  Yes, sir.
>
> THE COURT:  – own free independent decision to waive and give up these rights and enter a plea today.
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  All right.  Has your attorney forced or coerced you or persuaded you that you should enter these pleas?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  All right.  Are you satisfied with the advice and assistance of your attorney?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  All right.  Has she told you to answer any of my questions untruthfully in order to get me to accept your pleas today?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  All right.  So everything that you said to me has been

true and correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'm sorry?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Now do you have any questions concerning your decisions to enter a plea or anything about this interchange between you and I?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  So you're comfortable with going ahead and entering pleas today and being sentenced?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  At this time then before I accept your pleas let me explain one other thing to you.  After you enter a plea, if I accept the plea before any sentence is imposed I'm going to hear from you as well as from the State, is that clear to you?  And based on what I hear, then I'm going to determine what an appropriate sentence should be in these cases.

THE DEFENDANT:  Yes, sir.

THE COURT:  Is that clear to you?

THE DEFENDANT:  Yes, sir.

THE COURT:  And knowing all of these things then how is it that you wish to plead?

THE DEFENDANT:  No contest.

> THE COURT:  All right.  Upon your pleas of no contest then the Court
> is going to accept your pleas, the Court being satisfied that the pleas are
> knowingly made and entered in all of these cases including a violation
> of probation, which is also pending.
>
> The Court further finds that from the offense or arrest reports in
> these cases, the Court is satisfied that sufficient factual bases exists [sic]
> for this Court to accept the pleas and, therefore, the pleas are accepted.

(Ex. C, pp. 193-96).  Before sentencing petitioner, the trial court heard from defense

counsel and  petitioner himself in mitigation of sentence.  The State called witnesses

who testified to the impact of petitioner's crimes and the threat he posed to the

community.  Defense counsel's  emphasis on cross-examination was that petitioner's

wife was involved in the crimes, but was never prosecuted.  (Ex. D,  pp. 201-02).  In

addition, defense counsel elicited on cross-examination of the investigating officer

that the officer had been acquainted with petitioner's wife's father (Hosea Jones) for

several years.  (*Id*., pp. 209-10).  At the conclusion of the testimony and arguments

by counsel, defense counsel inquired of petitioner whether he wanted to say anything

pertaining to restitution.  Petitioner advised the court that because it was his wife who

had actually gone into the victim's home and taken the credit cards, she should be

solely responsible for restitution.  (*Id.*, pp. 214-15).  The court responded that even

if it were true that petitioner's wife was the one who took the credit cards, that fact

was irrelevant to the issue of restitution, because petitioner could be held responsible

for payment of all the restitution regardless of whether the obligation to make

restitution was joint and several among co-defendants.  (*Id.*).

The record of the plea and sentencing proceeding demonstrates that petitioner's

pleas were knowing, intelligent and voluntary.  His present claim that counsel was

ineffective for failing to take sufficient  pre-trial depositions in no way implicates the

validity of petitioner's pleas, because petitioner was aware of everything he now alleges, including defense counsel's pre-plea investigation, prior to entering his no contest pleas.  Counsel's alleged error, therefore, does not impact the knowing and intelligent nature of petitioner's pleas, and cannot provide a basis to overturn petitioner's convictions, because petitioner waived the issue.

Even if not waived, petitioner's present allegations fail to satisfy the *Strickland* requirement of "prejudice."  Like the petitioner in *Hill v. Lockhart, supra*, petitioner does not allege in his habeas petition that, had counsel deposed a particular witness, he would have insisted on going to trial.  Indeed, petitioner fails to so much as identify to this Court the identity of the proposed deponent, much less provide the specific substance of his or her testimony.  Although petitioner suggests that the proposed deponent would have inculpated petitioner's wife or shown that she lied about various things in her deposition (for example, her bigamy, which was immaterial to the crimes) (doc. 1, p. 4; doc. 2, pp. 3, 4), petitioner fails to show that a pre-trial deposition of the unnamed witness would have led counsel to change her recommendation as to the plea, or, more importantly, caused petitioner to insist on going to trial.  To the contrary, the record reveals that the decisive factor in petitioner's decision to plead no contest was not the role his wife played in the crimes or in the State's case against petitioner; rather, the decision to plea straight up was motivated by petitioner's desire to obtain a more lenient sentence.  Petitioner apparently heeded counsel's advice that if petitioner entered a plea, the sentencing judge would likely impose the lowest permissible sentence, but if petitioner went to trial, "the potential sentences [were] very long [45 years] and the potential for convictions [was] extremely high."  (Doc. 1, Ex. C; Doc. 17, Ex. C, p. 104, Letter

from Defense Counsel dated 4/27/07; *see also* Doc. 17, Ex. D, p. 232, Plea Form Indicating Maximum Possible Sentence; Doc. 17, Ex. C, p. 198, Petitioner's Argument in Mitigation of Sentence).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of clearly established federal law.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the state court record.  This claim does not warrant federal habeas relief.

<u>Ground 2</u>      Ineffective Assistance of Counsel – Failure to Advise Petitioner of the Possible Defense of Consent

Petitioner alleges:  "Counsel never told Defendant of the defense 'consent' even after Defendant explained his story to her.  Counsel simply impressed upon him to make a plea.  Had Defendant been properly advised by counsel, he would never have entered a plea."  (Doc. 1, p. 4).  Petitioner describes in his supporting memorandum that during his first meeting with defense counsel, he told counsel "that he was being framed by his wife along with the reason why."  (Doc. 2, p. 2). According to petitioner, his wife took the victim's credit cards and gave them to petitioner, advising petitioner (falsely) that the victim consented to petitioner using them, and then turned around and cooperated with police after the victim's family discovered the fraudulent charges.  Petitioner contends his wife "framed" him because he had discovered she was a bigamist and had threatened to divorce her and expose her bigamy.  (*Id.*, pp. 1-2).  Petitioner faults counsel for failing to advise him that the facts he disclosed supported a consent defense.  Petitioner acknowledges that after his meeting with defense counsel, defense counsel reviewed his wife's statement(s) to police and deposed her.  Petitioner further acknowledges that his

wife's deposition testimony and statements to police contradicted petitioner's story.[5]
Yet petitioner still faults counsel for failing to discuss the consent defense with him,
and for failing to "prepare evidence" to support petitioner's contention that his wife
was merely trying to "frame" him. (*Id*., pp. 1-2, 4).  Respondent concedes petitioner
exhausted this claim by raising it in his Rule 3.850 motion.  (Doc. 17, p. 8).

     A.     Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based
upon allegations of ineffective assistance of counsel is set forth above.

     B.     Federal Review of State Court Decision

The state trial court denied relief on this claim as follows:

> Defendant has not shown deficient performance or prejudice.  It
> is clear from the instant motion that Defendant was already aware he had
> a potential defense at the time of his plea as he claims that counsel
> should have "investigated Defendant's claim that his wife brought the
> credit cards to him to use, with consent from the owner, with the
> promise of repayment in September 2006."  As noted previously, it is
> also obvious from counsel's questions at the sentencing proceedings that
> she knew that Defendant's position was that his wife was at least
> partially responsible for the crimes charged.  However, rather than
> telling the Court that he had permission to use the cards and that he
> should not go to prison, Defendant told the Court repeatedly that he was
> freely deciding to plead to the charges.  Also, when the Court informed
> Defendant that taking a plea would waive his right to present defenses,
> Defendant agreed to the waiver.  The Court also notes that Defendant
> testified at the sentencing hearing, giving him the opportunity to tell his
> side of the story to the Court.  Defendant spoke up in his own defense
> again at the sentencing hearing to ask the Court to divide restitution

---

[5]Petitioner's wife testified that she did not know how petitioner came into possession of the
credit cards, but suspected he had used her key to Mr. Pippin's home to enter the home and steal
them. (Ex. C, pp. 39-40).

between Defendant himself and the person who allegedly took the cards. Defendant stated, "So whoever took the cards should also have to pay restitution also [sic] because it is known that I did not go to the man's house and take the cards." Defendant could have told the Court at that juncture that he had done nothing wrong because he allegedly had the victim's permission and that his counsel had failed to pursue a proper investigation of that defense and advise him accordingly, but he did not do so.

Consequently, even if counsel failed to inform Defendant of the legal name of the defense, "consent," Defendant knowingly and willingly declined the opportunity to take his case to trial and explain to a jury that he had had permission to use the victim's credit cards. This Court, therefore, finds that Defendant is not entitled to relief on his second claim.

(Doc. 17, Ex. C, pp. 167-68) (footnotes omitted). The state appellate court summarily affirmed.

The state appellate court reasonably could have concluded petitioner failed to carry his burden under *Strickland*. Contrary to petitioner's conclusory, after-the-fact assertion in his habeas petition that "Defendant had no idea that 'consent' was a defense and had he been advised of such, he would not have entered a plea," (doc. 1, p. 5), the record establishes that petitioner <u>was</u> aware of this potential defense. For example, petitioner states in his supporting memorandum that during his first interview with the investigating officer (prior to petitioner meeting with defense counsel) petitioner attempted to absolve himself by explaining that he "was given the credit cards to use with consent from his wife." (Doc. 2, pp. 1-2). Similarly, in petitioner's Rule 3.850 motion, petitioner alleged he made defense counsel aware of "Defendant's claim that his wife brought the credit cards to him to use, with consent from the owner, with the promise of repayment in September 2006." (Doc. 17, Ex.

C, p. 155).  Therefore, because petitioner was aware of the consent defense prior to entering his plea, he cannot establish that counsel's failure to inform him of the defense affected the plea process.

Further, petitioner concedes that defense counsel took his wife's and the investigating officer's depositions, and reviewed the arrest reports as well as other evidence.  Petitioner does not identify what other sources of evidence existed to support a consent defense, or what evidence defense counsel could have "prepared." The only other person who could have witnessed the victim's alleged consent was the victim, who was deceased.  Moreover, petitioner was asked at the plea and sentencing proceeding whether he had any questions concerning his decision to enter no contest pleas.  He responded, "No, Your Honor," and stated under oath that he was fully satisfied with counsel's advice and assistance and that his decision to enter his pleas and give up the right to present a defense was his own free, independent decision. (*Id.*, Ex. C, pp. 192-95).  Thereafter, petitioner was given additional opportunities to speak at the plea and sentencing proceeding.  At every opportunity, petitioner did not mention he had permission to use the credit cards, or complain that counsel failed to pursue that theory.  To the contrary,  he conceded that the State could prove the facts set forth in the arrest reports, which included the fact that he fraudulently used the credit cards.  (Ex. C, p. 196; Ex. D, p. 234 ¶ 8).  Petitioner's only comment was that his wife was the one who took the cards from the victim's home, but that does not imply petitioner believed he had the victim's consent to use them.  (Ex. C, pp. 192-99; Ex. D, pp. 214-15).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of clearly established federal law.  Nor was the

state court's decision based on an unreasonable determination of the facts in light of the state court record.  Therefore, this claim does not warrant federal habeas relief.

<u>Ground 3</u>    Ineffective Assistance of Counsel – "Counsel misrepresented the consequences of the plea entered by Defendant."  (Doc. 1, p. 5)

Petitioner alleges, "Defendant was led to believe he would be sentenced to a lot less time than he was and but for counsel's advice, would never have entered a plea."  (*Id*.).  Petitioner's supporting memorandum is likewise vague as to what, specifically, the alleged misrepresentation was.  (*See* Doc. 2, pp. 4-5).  Petitioner merely adds that counsel "repeatedly impressed upon petitioner to make a plea to obtain leniency from the judge at sentencing," and asserts that Florida law required the state postconviction court to conduct an evidentiary hearing "where petitioner alleged that he was induced to plead guilty to all charges . . . and this would result in significant charge and sentence reduction."  (*Id*., p. 5) (citations omitted).

Respondent asserts three bases for denying habeas relief.  First, the petition fails to comply with Rule 2(c)'s requirement that the petition state specific facts which entitle petitioner to habeas corpus relief.  (Doc. 17, pp. 9-10) (citing Rules Governing § 2254 Cases, Rule 2(c)).  Second, to the extent petitioner asserts the same claim he asserted in his postconviction motion – that counsel misrepresented the consequences of the plea by leading petitioner to believe he would receive no more than 60 months in prison – federal habeas relief is not warranted because the state court's denial of relief was consistent with, and a reasonable application of, federal law.  Third, to the extent petitioner challenges the state court's failure to hold an evidentiary hearing, that argument provides no basis for federal habeas relief.  (Doc. 17, pp. 10-12).

A.     Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based upon allegations of ineffective assistance of counsel is set forth above.

B.     Federal Review of State Court Decision

The Court liberally construes the petition as raising the same claim petitioner presented in his state-court motion for postconviction relief.   There, petitioner asserted defense counsel misrepresented the consequences of the plea by "leading Defendant to believe that by entering a plea to the court, Defendant would not receive more than 60 months in prison.  Defendant would have never entered a plea but for his attorney's advice." (Doc. 17, Ex. C, p. 92).  In support, petitioner attached a letter from defense counsel dated April 27, 2007 (six weeks before trial) in which counsel stated:

> Of course, my advice continues to be that you not go to trial, but enter into a plea agreement to resolve these matters.  Although I have not received a plea offer from the State, one will probably be offered by docket day.  I have asked the State to provide your score sheet, so we will know the lowest permissible prison sentence before you make a final decision about whether to go to trial.  As I told you before, Judge Geeker will usually impose the lowest permissible prison sentence.

(Ex. C, p. 104).

The state trial court noted, initially, that in a previous *pro se* Motion to Withdraw Plea, petitioner alleged counsel promised him no more than **forty-eight** months in prison rather than the sixty months he now alleged.  This inconsistency gave the state court "cause to question the veracity of Defendant's allegation." (Ex. C, p. 168 n. 12).  Notwithstanding this inconsistency, the trial court denied relief, explaining:

Defendant fails to state how his counsel "led [him] to believe" he would not receive more than 60 months in prison. Furthermore, Defendant signed a plea agreement, which was filed on June 12, 2007, clearly indicating the maximum penalties for the crimes with which he was charged and his maximum sentence exposure of 45 years. Additionally Defendant had ample opportunity to inform the Court of his belief that he could not be sentenced to more than 60 months at the June 12, 2007 hearing, but failed to do so.

(*Id.*, p. 168) (footnote omitted).  The trial court noted with regard to the plea agreement that petitioner did not enter a negotiated plea, but instead pled "straight up."  The plea agreement form was completed, signed and filed to create a record that petitioner was properly advised as to the consequences of entering his pleas.  (*Id.*, p. 168 n. 13; *see also* Plea Agreement at p. 232).  The trial court's denial of relief was summarily affirmed by the state appellate court.

The state appellate court reasonably could have concluded petitioner failed to establish deficient performance and prejudice under *Strickland*.  The record shows that petitioner was not induced to enter his plea by a guarantee or promise that he would receive no more than sixty months in prison.  The letter from defense counsel merely establishes that counsel made a preliminary prediction, not a promise, that the court would impose the lowest permissible sentence.  (Ex. C, p. 104).  Prior to petitioner entering his pleas, the trial court clarified with petitioner and counsel that "as far as any plea offer that concerns a sentencing outcome, that's been withdrawn by the State, is that right?" (*Id.*, p. 191).  Defense counsel agreed.  The court asked petitioner, "Mr. Harvey, before we proceed further, do you understand then that the prior plea offer and sentencing recommendation is withdrawn so if you enter a plea, it would be a straight up plea leaving the Court with the sole decision to fashion an appropriate sentence after I've heard both from you and the State?"  (*Id.*, p. 192).

Petitioner responded, "Yes, Your, Honor." (*Id*.).

During the plea proceeding, petitioner affirmed under oath that defense counsel had not forced, coerced, or persuaded him to enter no contest pleas; that he was satisfied with counsel's advice and assistance; that he had no questions concerning his decision to enter pleas; that he was comfortable with going ahead and entering pleas and being sentenced; and that he understood that if the court accepted his pleas, the court would hear argument from the parties concerning proposed sentences and then independently determine what the appropriate sentences should be in petitioner's cases. (*Id*., pp. 194-95). Immediately after affirming his understanding that the court would determine his sentence, the court asked, "Is that clear to you?" (*Id*., p. 195). Petitioner responded, "Yes, sir." The court asked, "And knowing all of these things then how is it that you wish to plead?" Petitioner responded, "No contest." (*Id*.). The foregoing conclusively rebuts petitioner's contention that his pleas were premised upon counsel's promise that he would receive no more than 60 months in prison.

Before leaving this Ground, the undersigned notes that petitioner additionally complains here that the state court erred in failing to hold an evidentiary hearing on this claim. (Doc. 2, p. 5). That issue is not cognizable on federal habeas review. It is well established in the Eleventh Circuit that a prisoner's challenge to the process afforded him in a state postconviction proceeding does not constitute a cognizable claim for habeas corpus relief. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to state post-conviction proceeding (the state

court's ruling that he waived his state collateral proceedings) was not cognizable on federal habeas review);[6] *Carroll v. Sec'y, DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir.) (holding that habeas petitioner's claim – that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing – did not state a claim on which a federal court may grant habeas relief), *cert. denied*, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009); *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam) (holding that state court's failure to conduct an evidentiary hearing on a postconviction motion does not constitute a cognizable claim for habeas relief); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (explaining that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.")

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard.  Nor was the state

---

[6]The Eleventh Circuit explained,

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief."  *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, --- U.S. ----, 130 S.Ct. 500, 175 L.Ed.2d 355 (2009).  There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – *i.e.*, the conviction itself – and thus habeas relief is not an appropriate remedy."  *Carroll*, 574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id.*, at 1325-26.

court's decision based on an unreasonable determination of the facts in light of the state court record.  Therefore, this claim does not warrant federal habeas relief.

Ground 4      Ineffective Assistance of Counsel - "Counsel failed to file a motion to withdraw plea at Defendant's adamant request to do so." (Doc. 1, p. 5).

Petitioner claims counsel refused to file a motion to withdraw plea, and that this failure prejudiced him by precluding petitioner from moving to withdraw his plea. (*Id*., p. 5).  Petitioner provides no further facts to support this claim, and neither his petition, memorandum, nor attachments suggest there was a meritorious basis for a motion to withdraw plea.  Petitioner's reply merely adds that petitioner would have moved to withdraw his plea on the grounds that it was involuntary.  (Doc. 29, p. 17; *see also* Fla. R. Crim. P. 3.170(l) and Fla. R. App. P. 9.140(b)(2)(A)(ii)(c)).

Respondent contends this claim is procedurally defaulted, because the state court denied relief on an independent and adequate state procedural-bar ruling (that the claim was insufficiently pled).  (Doc. 17, pp. 13-15).  In the alternative, respondent asserts that the state court's alternative ruling on the merits was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  (*Id*., pp. 15-16).

A.      Exhaustion and Procedural Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[7] thereby giving the state the "'opportunity to pass upon and correct'

---

[7]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

If a petitioner presents his federal claim in state court and the state court rejects the claim on an independent and adequate state ground of procedural bar, the claim is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In that circumstance, the federal court must determine whether the state's procedural default ruling rested on adequate state

---

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11ᵗʰ Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11ᵗʰ Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11ᵗʰ Cir. 1995).

The procedural default issue here is controlled by the Eleventh Circuit's decision in *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11ᵗʰ Cir. 2009), *cert. denied*, 130 S. Ct. 1141, 175 L. Ed. 2d 978 (2010).  In *Owen*, a federal habeas petitioner raised an ineffective assistance of appellate counsel claim, after presenting the same claim in a state habeas application filed in the Florida Supreme Court.  The Florida Supreme Court denied relief because the claim was insufficiently pled in that Owen did not identify any specific evidence in the record to support it.[8]  In Owen's federal habeas proceeding, the State asserted a procedural default defense, arguing that the state court's rejection of the claim was an independent and adequate state

---

[8]The Florida Supreme Court stated:

> Owen fails to identify specific evidence in the record which shows that his interests were compromised. Owen only states "conflict existed because appellate counsel could not raise his own ineffectiveness and could not raise the fact that Owen had filed a bar complaint"; thus, Owen's claim is insufficiently pled and relief is therefore denied.

*Owen v. Crosby*, 854 So.2d 182, 194 (Fla. 2003).

procedural-bar ruling which barred federal habeas review.  The Eleventh Circuit rejected this argument and held that the Florida Supreme Court's ruling was on the merits.  *Id.* at 913 ("The Florida Supreme Court's . . . insistence upon specific record evidence showing that appellate counsel's interests were actively compromised constitutes a ruling on the merits of Owen's claim.  Thus, Owen's [appellate-counsel] conflict-of-interest claim is not procedurally barred from federal habeas review.").

The same reasoning applies here.  Petitioner raised this ground of ineffective assistance in his Rule 3.850 motion.  The Rule 3.850 court denied relief, explaining:

> Defendant has failed to file a facially sufficient claim for relief, in that Defendant has failed to inform the Court of the grounds upon which he should have been allowed to withdraw his plea in the instant motion, or demonstrate that such a motion would have been properly granted.  Without such specific information, Defendant's claim is facially insufficient.  This Court has previously given Defendant leave to amend his motion per <u>Spera</u>, and Defendant has failed to make this claim facially cognizable.

(Doc. 17, Ex. C, p. 169) (footnote omitted).  The court went on to rule that even if facially sufficient, petitioner was not entitled to relief because he failed to show he was prejudiced by counsel's conduct.  The state appellate court summarily affirmed.  The state court's ruling is substantially the same as that at issue in *Owen*.  Therefore, the Court must conclude that the state court's ruling was not a state procedural-bar ruling – it was a ruling on the merits.  Therefore, petitioner's claim is not procedurally barred from federal habeas review.

B.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance claims is set forth above.

C.      Federal Review of State Court Decision

The state court, in addition to finding petitioner's claim insufficiently pled, went on to explain: "even were Defendant's claim facially sufficient, Defendant would still be entitled to no relief.  After a review of Defendant's original  motion to withdraw plea, this Court finds that both defendant's *pro se* Motion to Withdraw Plea and Defendants' instant motion allege the same or similar grounds for relief.  None of the grounds alleged in either motion would entitle Defendant to relief.   Therefore, Defendant cannot show that he was prejudiced by his counsel's refusal to file a motion to withdraw his plea, and he is not entitled to relief."  (Doc. 17, Ex. C, p. 169).  The state court attached to its order a copy of petitioner's *pro se* motion to withdraw plea. (Ex. D, pp. 224-25).

As the state court held, not only does petitioner's ineffective assistance claim lack evidence that petitioner was prejudiced by counsel's failure to file a motion to withdraw plea, the record conclusively establishes that petitioner was not prejudiced by counsel's conduct, because petitioner's proposed grounds to withdraw his plea (that counsel misrepresented the consequences of the plea, failed to discuss defenses and failed to depose witnesses, and that the investigative officer had a conflict of interest) were either considered by the postconviction court notwithstanding the lack of a motion to withdraw plea, or, if not considered, were without merit.  The state court's denial of relief on this claim was reasonable and consistent with established federal law.  Therefore, petitioner is not entitled to federal habeas relief.

<u>Ground 5</u>      "Ineffective Assistance of Counsel by Judiciary Acts"  (Doc. 1, p. 5
                 Continuation Page)

In this ground for relief, petitioner challenges his conviction on the grounds that

"Defendant requested a *Nelson* hearing and was denied." (*Id*.).[9]  Petitioner adds, "Defendant displayed legitimate reason, by legal standards, for the *Nelson* request, however, trial judge still denied Defendant's request." (*Id*.).  In petitioner's supporting memorandum, petitioner argues that he satisfied the 3-prong test outlined in *Blanding v. State*, 939 So.2d 173 (Fla. 1st DCA 2006); therefore, the trial court was required to appoint new counsel.  (Doc. 2, p. 6).[10]

Respondent contends this claim is procedurally defaulted, because the state

---

[9]In *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973), *approved by Hardwick v. State*, 521 So.2d 1071, 1074-75 (Fla. 1988), the Fourth District held:

> [W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge.  If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.  If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense.  If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.  See Wilder v. State, Fla. App. 1963, 156 So.2d 395, 397.  If the defendant continues to demand a dismissal of his court appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation by court appointed counsel.  See Cappetta v. State, Fla. App.1967, 204 So.2d 913 for principles that should guide the court in the exercise of such discretion.

*Id.* at 258-59.

[10]In *Blanding*, the court held that a hearing on a request to discharge court-appointed counsel is required only when a three-prong test is satisfied: first, the defendant must make a clear and unequivocal statement that he wishes to discharge appointed counsel; second, the reason for the requested discharge must be a claim of incompetence; and third, the alleged ineffectiveness must arise from the current representation by counsel, not past indiscretions.  *Blanding*, at 175.

court  denied relief on an independent and adequate state procedural-bar ruling (that the issue could have been raised on direct appeal).  Further, even assuming petitioner has stated an error of federal dimension, and ignoring the procedural default, this ground was waived by entry of petitioner's pleas.  (Doc. 17, pp. 17-19).

A.    Exhaustion and Procedural Default

The state trial court denied relief, noting that a Rule 3.850 motion based upon grounds which could have been raised on direct appeal maybe summarily denied, (Ex. C, p. 170) and that "[t]he Court's decision as to Defendant's request to have counsel removed was clearly reviewable upon direct appeal.  See generally Hampton v. State, 886 So. 2d 319 (Fla. 4th DCA 2004).  Consequently, Defendant is not entitled to relief on this basis."  (Id., p. 171).

The *Hampton* case was in a different procedural posture than petitioner's.  In *Hampton*, the defendant was convicted after a trial, and was allowed to raise the trial court's denial of a *Nelson* hearing on direct appeal.  *Hampton* did not involve a guilty plea or the waiver of a direct appeal.  Respondent does not cite to any Florida cases holding either that a defendant who pleads guilty may challenge the trial court's failure to conduct a *Nelson* inquiry on direct appeal, or that a defendant who pleads guilty and fails to raise the denial of a *Nelson* hearing on direct appeal is procedurally barred from raising it is a Rule 3.850 motion.  Thus, the Court declines to find the claim procedurally defaulted.

B.    Waiver

Even if not procedurally defaulted, the Court will not review the merits of petitioner's claim.  Petitioner's no contest pleas, intelligently and voluntarily made, bar his present assertion of a constitutional challenge to the pretrial proceedings, including

the trial court's denial of a *Nelson* hearing and failure to appoint new counsel.  *See generally Tollett v. Henderson*, 411 U.S. at 267; *Lefkowitz v. Newsome*, 420 U.S. at 288.  Therefore, petitioner is not entitled to federal habeas relief on this claim.

Ground 6        "Conflict of Interest by Investigating Agency" (Doc. 1, p. 5, Continuation Page)

Petitioner's last claim is that the investigating officer (Investigator Buzbee) had a conflict of interest due to his 15-year friendship with "two key states witnesses" (whom petitioner does not identify) and that due to this conflict, the officer "failed to investigate the story of one states key witness and withheld evidence that would have exhonerated [sic] the Defendant."  (Doc. 1, p. 5, Continuation Page).  Petitioner's supporting memorandum alleges that petitioner discovered on the morning of the plea proceeding that Investigator Buzbee had a 15-year friendship with petitioner's wife and her family.  Petitioner argues that "it is obvious and clearly understood" that this friendship caused the officer to conduct a corrupt investigation, because Buzbee "knew or should have known that petitioners' wife – state's key witness – had lied in a statement to police as well as deposition testimony indicating that petitioner stole her key and committed a burglary to obtain the credit cards.  This was in total contradiction to the known facts as well as the police report."  (Doc. 2, pp. 6-7).

Respondent asserts this claim is procedurally defaulted, because the claim "would be a direct appeal issue."  (Doc. 17, p. 19).  Respondent further contends the issue was waived by virtue of petitioner's plea, additionally arguing that the officer's alleged failure to investigate could not have legally harmed petitioner, because the officer had no obligation to conduct his investigation as petitioner saw fit.  (*Id*., p. 20).  Lastly, to the extent petitioner's claim intimates a *Brady* claim, the claim is procedurally defaulted because the state court found it insufficiently pled.  (*Id*.).

A.     Exhaustion and Procedural Default

The state court did not impose a procedural bar.  Rather, it denied relief on the grounds that petitioner's valid no contest pleas waived his right to contest the issues of Investigator Buzbee's alleged conflict of interest.  (Ex. C, pp. 170-71).  The state court further ruled that to the extent petitioner suggested there was a *Brady*[11] violation, the claim was denied as facially insufficient.  (*Id.*, p. 171).  Respondent's procedural default defense is therefore rejected.

B.     Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based upon antecedent constitutional infirmities is set forth above.

C.     Federal Review of State Court Decision

On the issue of Investigator Buzbee's alleged conflict of interest in investigating petitioner's case, the state court ruled that petitioner's no contest pleas waived his right to "contest the factual issues of his case, including the possible bias of any of the witnesses [and] including the alleged bias of the investigating officer."  (Doc. 17, Ex. C, p. 170).  This ruling is consistent with, and a wholly reasonable application of, clearly established federal law.  As set forth above, by voluntarily and intelligently entering no contest pleas, petitioner waived any claim of error as to the alleged bias of the investigating officer and any witnesses, as well as any claim of error as to an inadequate investigation by law enforcement.  Thus, this aspect of petitioner's claim provides no basis for federal habeas relief.

----

[11]In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that the suppression of material, exculpatory evidence by a prosecutor violates due process.  Even assuming that petitioner's no contest plea did not waive his *Brady* claim, petitioner is not entitled to federal habeas relief.

The state court also denied relief on that aspect of petitioner' claim suggesting that the investigator may have withheld exculpatory evidence, describing petitioner's allegation as one "which could potentially form the basis for a <u>Brady</u> claim." (Ex. C, p. 171). The court reiterated the following standard for establishing a *Brady* violation: "a defendant must prove (1) that evidence favorable to the accused because it is exculpatory or impeaching, (2) was suppressed by the State, either willfully or inadvertently, (3) resulting in prejudice to the defense.'" (Ex. C, p. 171 (quoting *Pardo v. State*, 941 So.2d 1057, 1065 (Fla. 2006)). This the clearly established federal standard. *See Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999). Applying this standard, the state court denied relief finding: "Defendant has failed to inform the court what information was withheld from the defense that would have tended to exonerate Defendant. Nor has Defendant demonstrated that the alleged non-disclosure has in any way prejudiced him. Therefore this claim is facially insufficient." (Ex. C, p. 171). This ruling was a denial on the merits. *Owen*, 568 F.3d at 913. And, because the ruling was on the merits, the state court's decision is entitled to deference under AEDPA. As the state court held, petitioner's claim lacks evidence: (1) of what information was allegedly withheld, (2) that such information was material and would have tended to exonerate petitioner, and (3) that the alleged non-disclosure prejudiced petitioner. Thus, the state court's denial of relief on this aspect of petitioner's claim was reasonable and consistent with established federal law. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Ivan J. Harvey* in the Circuit Court for Escambia

County, Florida, Case Nos. 04-5775, 06-3599, 06-4302 and 06-4303 be DENIED, and the clerk be directed to close the file.

    2.  That a certificate of appealability be DENIED.

    At Pensacola, Florida this 27th day of September, 2011.


/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).